Filed 7/16/21  In re L.U. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re L.U., a Person Coming Under the Juvenile Court Law. | B306908 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.H.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP02077) |

APPEAL from findings and orders of the Superior Court of Los Angeles County.  Marguerite Downing, Judge.  Affirmed.

Nancy R. Brucker for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

————————————

The juvenile court asserted jurisdiction over minor L.U. and removed him from his parents' custody after finding the parents engaged in numerous violent altercations. On appeal, L.U.'s father contends there is insufficient evidence to support the jurisdictional findings and removal orders. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 16, 2020, the Los Angeles County Department of Children and Family Services (DCFS) received a report that L.U.'s mother (Mother) called police after the child's father (Father) hit her five times. According to the reporter, L.U., who was one year old at the time, was sleeping but woke up during the incident.

During its investigation, DCFS discovered that Mother had previously made several other reports of domestic violence to law enforcement. In August 2019, Mother called 911 and said Father was assaulting her and L.U. The 911 operator heard a struggle and a woman yelling, and then the call disconnected.

An officer who responded to the call described Mother as scared, crying, and nervous. Father was not there. Mother was uncooperative and told the officers that Father became upset but was not violent. The officers did not see any visible injuries on Mother. DCFS opened an investigation, but Mother was uncooperative and DCFS closed the referral as inconclusive.

In October 2019, Mother called police and reported that Father had physically assaulted her, and then the line disconnected. Mother and Father were gone when police arrived at their home. A neighbor told police there was no disturbance.

In December 2019, Mother again called police and reported Father physically assaulted her, and then the line disconnected.

When officers arrived at the home, Father was gone. The officers noted there was "no crime," only a "dispute."

Sometime around March 13, 2020, Mother went into a police station and reported that Father "got angry" and hit her 10 times. The officer who took the report described Mother as "hysterical." The officer did not see any marks or bruises on Mother or L.U. He called an ambulance for Mother, but she refused to go to a hospital.

L.U.'s maternal grandmother (Grandmother)—who had custody of Mother and Father's other child—told DCFS that the child's parents had a "horrible" and "violent" relationship. Grandmother showed DCFS text messages from March 11, 2020, in which Mother claimed she was in pain because Father "socked" her in the face. According to Grandmother, Mother previously told her that Father had assaulted her.

Mother and Father acknowledged having verbal arguments, but they denied any domestic violence. They told DCFS that L.U. was in the home when they argued.

According to Mother, she would call law enforcement to scare Father when he became verbally aggressive toward her. She claimed she went to the police station after she had an argument with Father and accidentally locked herself out of her home while taking out the trash. Mother acknowledged sending the text messages to Grandmother, but she insisted Father never hit her.

Although Mother and Father denied domestic violence, they agreed to abide by a safety plan requiring they live in separate homes. In July 2020, however, Father told DCFS that he and Mother were still in a relationship and had recently started living together. Mother denied living with Father, but

said she intended to resume a romantic relationship with him in the future. Neither Father nor Mother enrolled in any services.

DCFS filed a petition asserting L.U. is a person described by Welfare and Institutions Code section 300.[1] The petition alleged two counts, one under subdivision (a) and one under subdivision (b)(1). The substantive allegations were the same for each count: Mother and Father "have a history of domestic violence and of engaging in violent altercations. On or about 03/16/2020, the father repeatedly struck the mother. On or about 03/11/2020, the father struck the mother's face with the father's closed fist, inflicting pain to the mother's face. . . . Such violent conduct on the part of the father against the mother and the mother's failure to protect the child endanger the child's physical and emotional health and safety and place the child at risk of serious physical and emotional harm, damage, danger, and failure to protect."

The juvenile court removed L.U. from his parents' custody, and DCFS placed the child with Grandmother. According to Grandmother, L.U. was dirty and reeked of smoke when he first came to live with her.

The juvenile court held a combined jurisdiction and disposition hearing on July 27, 2020. The court sustained the petition, declared L.U. a dependent of the court, and removed him from his parents' custody. The court found the evidence showed multiple instances of domestic violence and a cycle of abuse, and the parents were not credible. The court further noted that Mother and Father were in denial about the domestic violence, and neither had enrolled in services.

---

[1] All future undesignated statutory references are to the Welfare and Institutions Code.

Father appealed.

## DISCUSSION

**I. Substantial Evidence Supports the Jurisdictional Findings**

Father contends there is insufficient evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b)(1). We disagree.

" 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings . . . of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Under section 300, subdivision (b)(1), the juvenile court may exercise jurisdiction over a child when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of the failure of his or her parent to "adequately supervise or protect the child." (§ 300, subd. (b)(1).) It is well established that exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)(1). (See *In re R.C.* (2012) 210 Cal.App.4th 930, 941; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) "Although 'the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a

5

child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133, italics omitted.)

Here, there is substantial evidence that L.U. was exposed to several incidents of domestic violence, which is sufficient to support jurisdiction under section 300, subdivision (b)(1). The record shows that, since L.U.'s birth, Mother reported to law enforcement four separate incidents of domestic violence with Father. In the most recent report, Mother accused Father of becoming angry and hitting her 10 times. Mother also told Grandmother she was in pain after Father "socked" her in the face, and Father had previously physically attacked her. The evidence further indicates L.U. was in the home during the altercations, which placed him at substantial risk of physical harm. (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 [a cycle of violence between parents constitutes a failure to protect the child from the substantial risk of encountering the violence and suffering serious physical harm from it].)

Although Mother subsequently denied any domestic violence with Father, the juvenile court could reasonably conclude her recantations, both to law enforcement and DCFS, were not credible. Mother insisted she fabricated her reports of domestic violence in order to scare Father when he became verbally aggressive. While this might explain her phone calls to police, it does not explain her text messages to Grandmother or her decision to file an in-person police report. Mother failed to provide any plausible explanation for either of those. On this record, the juvenile court could reasonably find Mother's initial reports were truthful, and her recantations fabricated.

There is also ample evidence from which the juvenile court could conclude it is likely L.U. will be exposed to future incidents of domestic violence between his parents.  Mother and Father indicated they intended to remain in a relationship, and Father reported they were living together as of July 2020.  Moreover, both Mother and Father continued to be in denial about the numerous incidents of domestic violence, and neither had participated in services to address their issues.  The court could have reasonably concluded that, until Mother and Father acknowledge and address Father's past domestic violence, it is likely to recur.  (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."]; *In re V.L., supra*, 54 Cal.App.5th at p. 156 ["A parent's denial of domestic violence increases the risk of it recurring."].)

Father insists the record shows there was no domestic violence between him and Mother.  In support, he points out that Mother did not have visible bruises or injuries, he was never charged with a crime, DCFS closed an earlier referral as inconclusive, and both parents repeatedly denied any domestic violence.  Such evidence might support a finding that there was no domestic violence, but does not compel it.  Father's arguments, therefore, are nothing more than thinly-veiled attempts to have us reweigh the evidence and exercise our independent judgment, which we decline to do on appeal.  (See *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992 ["Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment."].)[2]

---

[2]     Because there is sufficient evidence to support jurisdiction under section 300, subdivision (b)(1), we need not consider Father's argument that insufficient evidence supports

7

## II.    Substantial Evidence Supports the Removal Orders

Father contends there is insufficient evidence to support the juvenile court's orders removing L.U. from his and Mother's custody.  We disagree.

Initially, we reject DCFS's contention that Father lacks standing to appeal the order removing L.U. from Mother's custody.  *In re R.V.* (2012) 208 Cal.App.4th 837, is instructive.  In that case, the court found a father had standing to challenge an order removing his child from the mother's custody and placing the child in foster care.  The court explained that, until parental rights are terminated, a parent maintains a fundamental interest in a child's companionship, custody, management, and care.  Because an out-of-home placement could affect the father's own interest in reunifying with the child, the father had standing to challenge the order removing custody from the mother.  (*Id.* at p. 849.)  The same is true here.

Turning to the merits, under section 361, subdivision (c)(1), "[a] dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor

_____

jurisdiction under section 300, subdivision (a).  (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate."].)

from the minor's parent's . . . physical custody." Before removing a child from a parent, the juvenile court must also determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home . . . ." (§ 361, subd. (e).)

"'A removal order is proper if based on proof of a parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances.' [Citation.]" (*In re A.S.* (2011) 202 Cal.App.4th 237, 247, disapproved on other grounds by *Conservatorship of O.B., supra*, 9 Cal.5th at p. 1003, fn. 4.)

"On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence. [Citation.]" (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809.)

Here, there is substantial evidence supporting the juvenile court's orders removing L.U. from Father's and Mother's custody. As discussed above, the record shows that Father physically assaulted Mother on numerous occasions while L.U. was in the home, which placed the child at risk of harm. Father and Mother then refused to participate in services or even acknowledge the domestic violence took place. Moreover, although Father and Mother initially agreed to live apart, in July 2020—less than a month before the disposition hearing—Father told DCFS he and

9

Mother resumed living together. The juvenile court could have reasonably concluded the parents' unresolved domestic violence issues would pose a substantial risk to L.U.'s physical safety and well-being absent removal, especially considering the child's tender age and the frequency of the prior domestic violence. (See *In re T.V., supra,* 217 Cal.App.4th at p. 133 ["A parent's past conduct is a good predictor of future behavior."]; *In re Gabriel K., supra,* 203 Cal.App.4th at p. 197.)

## DISPOSITION

We affirm the jurisdictional findings and dispositional orders.


OHTA, J. *

We Concur:


GRIMES, Acting P. J.


STRATTON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.